IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WALTER SHUKER, et al.        :       CIVIL ACTION
                             :
    v.                       :       No. 13-6158
                             :
SMITH & NEPHEW PLC, et al.   :

## ORDER

AND NOW, this 31st day of March, 2015, it is ORDERED Defendant Smith & Nephew plc's Motion to Dismiss for Lack of Personal Jurisdiction (Document 49) is GRANTED.[1]  Smith & Nephew plc is DISMISSED as a party to this case.

---

[1] Plaintiffs Walter and Vivian Shuker, husband and wife, bring products liability-related claims against Smith & Nephew, Inc. (S&N) and Smith & Nephew plc (PLC), seeking damages for injuries Mr. Shuker sustained after undergoing hip replacement surgery in April 2009 with artificial hip components allegedly designed and manufactured by both Defendants.  The components implanted in Mr. Shuker during his surgery included a femoral head, a femoral stem, an acetabular shell, and a metal liner for the shell.  The first three components were part of the R3 Acetabular System (R3 System), a hip replacement system which the Food and Drug Administration (FDA) authorized S&N to market in the United States with a polyethylene liner.  The metal liner, while called the R3 metal liner, was not approved for use with the R3 System in the United States, but was approved for use with the Birmingham Hip Resurfacing (BHR) System, a separate device.  Approximately 21 months after his surgery, Mr. Shuker developed pain and discomfort in his buttocks, groin, and thigh, which his surgeon determined was caused by metal sensitivity due to the degeneration of the metal-on-metal articulation of the R3 metal liner and the femoral components of the R3 System.  In June 2012, Defendants withdrew the R3 metal liner component within the R3 System.  Plaintiffs thereafter brought the instant lawsuit, seeking to hold Defendants liable for Mr. Shuker's injuries under a number of theories.

S&N is a Delaware corporation with its principal place of business in Tennessee. Clausen Decl. ¶¶ 1, 4.  PLC is an English company incorporated under the laws of England and Wales.  Swabey Decl. ¶ 3.  PLC is also the indirect parent company of S&N:  PLC wholly owns Smith & Nephew USD Limited, an English company that wholly owns Smith & Nephew Holdings, Inc., a United States company that, in turn, wholly owns S&N.  *Id.* ¶ 5.  PLC asks this Court to dismiss this action against it for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), arguing it lacks sufficient minimum contacts with Pennsylvania.  PLC filed the instant motion to dismiss in response to Plaintiffs' First Amended Complaint, which was the operative complaint at the time the motion was filed.  By separate order of today's date, the Court granted Plaintiffs' motion for leave to file a Second Amended Complaint; hence, the Court considers PLC's motion as to that amended pleading.

"Under Federal Rule of Civil Procedure 4(k), a District Court typically exercises personal jurisdiction according to the law of the state where it sits." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). Pennsylvania's long-arm statute permits the exercise of personal jurisdiction "to the fullest extent allowed under the Constitution of the United States" and "based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. Ann. § 5322(b). Accordingly, this Court must determine whether PLC has "certain minimum contacts with . . . [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor*, 496 F.3d at 316-17 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Once the defense of lack of personal jurisdiction is raised, "the plaintiff bears the burden of showing that personal jurisdiction exists." *Marten v. Godwin*, 499 F.3d 290, 295-96 (3d Cir. 2007). Where the court does not hold an evidentiary hearing, the plaintiff "need only establish a prima facie case of personal jurisdiction and . . . [is] entitled to have [its] allegations taken as true and all factual disputes drawn in [its] favor." *O'Connor*, 496 F.3d at 316 (3d Cir. 2007) (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)). A plaintiff meets its burden to establish a prima facie case by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (East) PSFS v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (citation omitted). Because a Rule 12(b)(2) motion "is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies," the plaintiff may not rely on "bare pleadings alone" but "must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984); *see also Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) ("[O]nce a defendant has raised a jurisdictional defense, the plaintiff must prov[e] by affidavits or other competent evidence that jurisdiction is proper." (citation and internal quotation marks omitted)).

In support of its motion to dismiss, PLC has submitted sworn declarations from Susan Swabey, PLC's Company Secretary, and John Clausen, S&N's Vice President for Reconstruction-Hips. According to these declarations, S&N is the only Smith & Nephew entity responsible for selling and distributing the R3 System in the United States, including in Pennsylvania. Clausen Decl. ¶ 6. S&N also promotes, markets, and advertises the R3 System in the United States, is "registered as the manufacturer of record with the [FDA] for the [R3 System]," and is responsible for the language of the product label and package insert for the R3 System. *Id.* ¶¶ 7, 9. PLC, in contrast, is a holding company that holds the stock of its direct subsidiaries and operates its global medical technology business through approximately 150 direct and indirect subsidiaries around the world. Swabey Decl. ¶ 4. Although PLC exercises some oversight over its subsidiaries, approving the most significant capital expenditures and high-level strategic business decisions, it is not involved in the day-to-day operations of its subsidiaries, including S&N, and does not conduct any business related to medical devices. *See id.* ¶¶ 7, 9. In particular, PLC does not manufacture, assemble, produce, sell, offer for sale, design, develop, test, market, advertise, promote, package, label, import, export, or distribute the R3 System or its component parts; does not enter into agreements for the distribution of the R3 System in the United States or otherwise place the R3 System into the stream of commerce; and has not approved any business decision or otherwise directed S&N with respect to the design,

development, manufacture, assembly, packaging, labeling, marketing, advertising, promotion, distribution, sale, testing, or provision of warnings or warranties of the R3 System. *See id.* ¶¶ 9-10; Clausen Decl. ¶ 10. PLC also had no involvement in decision to withdraw the R3 metal liner from the market; that decision was made solely by S&N. *See* Swabey Decl. ¶ 11; Clausen Decl. ¶ 11. PLC has never been registered to do business in Pennsylvania; has no offices, employees, or agent for service of process in Pennsylvania; and does not own any real property, bank accounts, or other assets in this Commonwealth. *See* Swabey Decl. ¶ 8.

Plaintiffs seek to establish that the exercise of personal jurisdiction over PLC is proper under two theories. *See* Pls.' Opp'n 6. Plaintiffs first argue PLC is subject to specific jurisdiction in Pennsylvania under the stream-of-commerce theory. They also maintain PLC is subject to personal jurisdiction in this Commonwealth as the alter ego of S&N. As set forth below, however, Plaintiffs have failed to make the requisite prima facie showing of personal jurisdiction under either theory.

Specific jurisdiction exists if (1) the defendant "purposefully directed [its] activities at the forum," (2) the litigation "arise[s] out of or relate[s] to at least one of those activities," and (3) "the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice." *O'Connor*, 496 F.3d at 317 (citations and internal quotation marks omitted). The stream-of-commerce theory is "a means of sustaining jurisdiction in products liability cases in which the product has traveled through an extensive chain of distribution before reaching the ultimate consumer." *Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 280 (3d Cir. 1994) (citation omitted). Under the theory, jurisdiction may, in some circumstances, be exercised "over a non-resident defendant, often a manufacturer or distributor, which has injected its goods into the forum state indirectly via the so-called 'stream of commerce.'" *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 104-05 (3d Cir. 2009). The test for what constitutes "purposeful availment" in the stream-of-commerce context remains unsettled. The Third Circuit has not had occasion to decide whether it is enough that the defendant placed goods in the stream of commerce with awareness "that the final product is being marketed in the forum State," or whether some "additional conduct" by the defendant indicating "an intent or purpose to serve the market in the forum State" is required. *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 204, 207 n.13 (3d Cir. 1998) (quoting separate plurality opinions in *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112, 117 (1987)); *see also D'Jamoos*, 566 F.3d at 105 n.15. Plaintiffs have not established a prima facie showing under either formulation, as they offer no evidence either suggesting that PLC had any involvement in injecting the components used in Mr. Shuker's surgery into the stream of commerce or contradicting Swabey and Clausen's sworn statements to the contrary.

The only evidence that even arguably constitutes a link in the distribution chain for the R3 System is a March 2008 press release announcing the launch of the R3 System. Plaintiffs note the press release includes a quote from PLC's President of Orthopaedics and directs analyst/investor inquiries to PLC's Director of Corporate Affairs, but the press release itself was issued by *S&N*, not PLC, and it in no way suggests PLC is the seller of the System. That PLC later issued a press release regarding the withdrawal of the R3 metal liner component of the R3 System also does not suggest PLC played any role in injecting the liner or any other components into the stream of commerce. Plaintiffs also present evidence that PLC owns the Smith & Nephew trademark in the United States and spent millions of dollars on research and development in 2013. But even accepting Plaintiffs' speculation that PLC also spent millions on

research and development years earlier, "at the time of the development of the [R3 System]," Pls.' Opp'n 8, neither that investment nor the fact that PLC may have authorized S&N to use the Smith & Nephew name in any way undermines Swabey and Clausen's sworn statements that PLC "has no involvement in the design, manufacture, packaging, labeling, sale, or distribution of the R3 Acetabular System in the United States," Clausen Decl. ¶ 10; *see also* Swabey Decl. ¶ 9. This evidence thus provides no basis for jurisdiction under the stream of commerce theory. *See Czarnecki v. Krause, Inc.*, No. 07-4384, 2008 WL 4083173, at *6 (E.D. Pa. Aug. 28, 2008) (noting that "ordinarily only a manufacturer is held liable for a faulty product under a stream of commerce theory" and questioning a product designer could be subject to personal jurisdiction under this theory).

Although the Swabey and Clausen declarations do not specifically address Plaintiffs' allegations regarding the BHR System, which were not included in Plaintiffs' First Amended Complaint, Plaintiffs' evidence regarding this System fares no better. Plaintiffs assert the BHR System "was developed in the United Kingdom in the early 1990s and was subsequently acquired by Smith & Nephew Orthopedics." Pls.' Opp'n 4. Plaintiffs further assert the trademark for the BHR System is owned by Smith & Nephew Limited Corporation, a subsidiary of PLC In the United Kingdom, and the component parts of the BHR System are manufactured and inspected in the United Kingdom by different wholly owned PLC subsidiaries. *See id.* at 4, 9-10. While this evidence suggests that PLC subsidiaries other than S&N are responsible for manufacturing, selling, and distributing the BHR System, it provides no basis to infer that "[a]s the parent of all these subsidiaries, [PLC] is clearly coordinating the activities of its subsidiaries to distribute its products in Pennsylvania to consumers." Pls.' Opp'n 10. Plaintiffs also assert that PLC's stock is actively traded on the New York Stock Exchange, but they provide no explanation for how this constitutes the purposeful direction of PLC's activities in *Pennsylvania*. The Court therefore finds Plaintiffs have failed to establish a prima facie case of specific jurisdiction under the stream-of-commerce theory.

Under the alter ego theory of jurisdiction, a court may exercise personal jurisdiction over a parent company based on a subsidiary's connection to the forum "if the plaintiff can show that 'the parent controls the day-to-day operations of the subsidiary such that the subsidiary can be said to be a mere department of the parent.'" *Radian Guar. Inc. v. Bolen*, 18 F. Supp. 3d 635, 648 (E.D. Pa. 2014) (quoting *Simeone v. Bombardier-Rotax GmbH*, 360 F. Supp. 2d 665, 675 (E.D. Pa. 2005)). This question "should be examined in terms of the legal interrelationship of the entities, the authority to control and the actual exercise of control, the administrative chains of command and organizational structure, the performance of functions, and the public's perception." *Simeone*, 360 F. Supp. 2d at 675 (citation omitted). Factors relevant to this inquiry include:

> (1) ownership of all or most of the stock of the subsidiary; (2) common officers and directors; (3) a common marketing image; (4) common use of a trademark or logo; (5) common use of employees; (6) an integrated sales system; (7) interchange of managerial and supervisory personnel; (8) performance of business functions by the subsidiary which the principal corporation would normally conduct through its own agents or departments; (9) marketing by the subsidiary on behalf of the principal corporation, or as the principal's exclusive distributor;

BY THE COURT:

        /s/ Juan R. Sánchez
      Juan R. Sánchez, J.

---

      and (10) receipt by the officers of the subsidiary corporation of instruction from the principal corporation.

*Id.*

      Upon consideration of all of the relevant factors, this Court finds Plaintiffs have not made a prima facie showing that PLC is the alter ego of S&N for jurisdictional purposes. While PLC indirectly owns all of S&N's stock, owns the Smith & Nephew trademark used by S&N, and shares a common website with its subsidiaries, PLC and S&N are separate legal entities, each with its own board of directors, officers, corporate books and records, business facilities, and financial accounts. Swabey Decl. ¶ 6. There is no evidence of the kind of significant overlap in the companies' boards, officers, or management personnel that might support an inference of PLC's ability to control S&N. *See In re: Latex Gloves Prods. Liab. Litig.*, No. MDL 1148, 2001 WL 964105, at *4 (E.D. Pa. Aug. 22, 2001) (noting the "nearly complete congruence" of a parent and subsidiary's directors and officers showed the parent could exercise control over the subsidiary). Indeed, Plaintiffs identify only one officer common to both companies. Nor is there any evidence that PLC actually exercises control of S&N's day-to-day operations. While PLC admits to having "some oversight authority over its subsidiaries, such as approval of the most significant capital expenditures and high-level strategic business decisions," Swabey Decl. ¶ 7, these activities are precisely the sort of "[a]ppropriate parental involvement" that is not indicative of "an unusually high degree of control over the subsidiary," *In re: Latex Gloves*, 2001 WL 964105, at *3 (citations omitted). In their sworn declarations, Swabey and Clausen specifically deny that PLC had any involvement with the R3 System, and Plaintiffs have not presented any evidence to the contrary. Moreover, because PLC is a holding company, S&N does not perform a function that PLC would otherwise have to perform itself, as PLC "could simply hold another type of subsidiary." *Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 422 (E.D. Pa. 2005). In these circumstances, Plaintiffs have not made a prima facie showing of jurisdiction under the alter ego theory.

      Finally, Plaintiffs request the opportunity to conduct jurisdictional discovery. While such discovery should be permitted when "a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state," *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (citation and internal quotation marks omitted), Plaintiffs have not made such a showing here. Accordingly, the request for discovery is denied, and PLC's motion to dismiss is granted.